Mr. DeMaria. I hope I pronounced your name correctly. I'm sorry. I hope I pronounced your name correctly. Maria. Okay. I apologize. Please the court. I represent the appellant Brenda Rodriguez. I'd like to focus my submissions this morning on my sentencing arguments. My first argument is that the district court failed to pronounce a lawful sentence. Ms. Rodriguez received a sentence of 300 months, that's 25 years for a first-time nonviolent offense. And this court absolutely must not countenance the manner in which sentence was imposed. Now the exact pronouncement of sentence, the exact wording is absolutely critical. That's at page 30 and 31 of appellant's opening brief. And all the district court said in this case is on counts one through four, I sentence you to 300 months. Thereafter probation corrects the trial judge and says, your honor stated 300 months, but the statutory maximum per account is 120 months. So we need to get you 300 months. The court response. So consecutively on count one and two, 120 months. And then, and here it's absolutely clear. The district court judge paused and we wait for probation to chime in. Probation says we can do the words we can do are very important. 60 months your honor on count three to reach the 300 months. And the judge basically asks probation against saying, and that leaves us with, and he's expecting probation to do the calculation rather than doing it himself. It's clear in the transcript judge was pausing and probation says we can do count for 120 months to run concurrently to the other three counts. And all the district court says is, okay, sorry. It's just more complicated than it needs to be. The judge never adopts or ratifies the probation officer's calculation. And basically this court has held and they left in a war as that if there's a conflict between a written sentence and an oral pronouncement, the oral pronouncement controls. And in this case, the oral pronouncement is an illegal sentence. I'm saying it's for a district court judge to pronounce sentence, not for probation, not for the courtroom deputy, not for the clerk. It's for the district. Why do you, why do you say what's your best authority for the proposition when the judge said 300 months, that's an illegal sentence? So each count had a 10-year statutory maximum. And the judge needs, it's quite possible, you know, one count may be reversed or whatnot. The judge really needs to give consideration as to how the to decide that it's count four that should run concurrently. You can get you 300 months all sorts of ways with a four-count sentence. And this court has not addressed this exact issue. But I say this court absolutely should. And it wouldn't take much effort for the district court judge to simply say, I agree with probation. I adopt or ratify what probation has said. But it's absolutely critical for the judge to ratify the sentence, not simply let a third party pronounce it. And again, Ms. Rodriguez got 300 months in prison. She deserves a lot more than an okay, sorry, it's just more complicated than it has to be. Now, this ties in also to my consecutive versus concurrent sentencing argument where Gall has made it very, very clear and repeated decisions have made it clear that a district court needs to provide sufficient explanation to give an appellate court, to provide an appellate court with a meaningful opportunity to review the sentence. In this case, just like the Sixth Circuit Cochran case, the court, the district court provided absolutely no rationale as to why it was imposing the sentences consecutively rather than concurrently. Now, the prosecution did say at sentencing that Ms. Rodriguez was lucky. There's a 10-year statutory cap, which to me shows, and I'm not saying the judge can go way above what the prosecution says, but it seemed like the prosecution didn't even consider the possibility of a consecutive sentence, and here the judge imposed multiple sentences consecutively. In light of Gall, we need an explanation for that. And I want to point three very brief snippets from sentencing to really put my argument in context. This is not in my brief, but they're very, very short snippets. At page 985 of the Record on Appeal, the district court says, at this point, it's been so long, I don't remember that. And that refers to Magdalene Ackerman's 36-month sentence. Now, that's basically paragraph 9 of the probation report. That's page 1669 of the Record. The judge had unfamiliarity with the case despite having presided at trial. At page 989 of the Record, the district court says, I just don't remember, and I didn't think to look it up in the first place, that Magdalene Ackerman's 36-month sentences were indicted. So I take it your main, or at least this argument, I know you've got a few arguments on sentencing, but this argument is essentially, he didn't spell it out, and it's unclear why he went to consecutive. Exactly. Okay. Isn't it fairly obvious why he went to consecutive? What other explanation is there other than the 5G 1.2D theory? Well, I'm saying the district court may not even have realized there was a 120-month statutory cap per count, as silly as that sounds. And that's why I'm pointing the court out to these three paragraphs, where the judge seemed really unfamiliar with what was transpiring before him. You know, we're talking about seven points that are in the first couple pages, first five pages of the probation report. He doesn't know what a code of venom was sentenced. It's right there. He doesn't know how many it's right there. What did the PSR recommend the ultimate sentence to be, the written PSR? I don't recall the low range, but it calculated the range at 300-something up to 405 months in prison. So he did go below what the probation report recommended, but I just find it so stunning that the prosecution's thinking that Ms. Rodriguez, and I assume the prosecution realized that the judge couldn't impose consecutive sentences, but it's so bizarre to have a prosecutor say, hey, she's lucky you can only give her 10 years. And then judge basically goes way, way above that. And so we really, really need... But the prosecution didn't file any kind of sentencing memo or anything with the suggestion or support for a recommended sentence? They did ask for a recommended sentence, which makes me think that perhaps it's sentencing, but government had second thoughts. It's really what happened in this... What was the thrust of the memo? The case went to trial. We know that. So what was the thrust of the memo? For a guideline sentence? Right. For a guideline sentence. And I guess that's sort of the issue we have here, that she got a below-guideline sentence, but it's still a crazy, crazy sentence. First-time offender, 56 years old. She made $250,000. That doesn't include overhead, over almost three years, I believe two years and eight months, out of an $11 million scheme. A co-defendant got 36 months. Another one got, I believe... Got 36 months. So she basically got eight times more than one of those co-conspirators. And the other troubling issue here is the judge made absolutely no mention of the sentencing guidelines at sentencing. How did he adopt the PSR? He did adopt the PSR. Your Honor, I don't practice in the Southern District of Texas or this region, but in my experience, judges really go in great detail through the guideline calculation. And what's bizarre in this case, too, is the abuse of trust enhancement. It's not... The judge did adopt it, but it seemed as though he was highly skeptical as to whether or not it applied. The government even says that in third brief. Is there sort of an irony to your point here? That, I mean, it's the government who didn't want to have this case tried before this judge, and your client fought that. And now you're saying he's abusing his trust. I'm not saying you forfeited the argument. It's just a bit ironic. I don't think anyone could have anticipated sentencing going the way it did. If anything, I would say the evidence at trial would have suggested much lower sentences. You say that, but the PSR recommended more than 300 months. A guideline sentence that was above 300 months. So how can you say no one anticipated? Because the PSR prepared at least 30 days before the sentencing hearing. Your client had an opportunity to object. The government was recommending a guideline sentence, so I don't see how you could say no one expected a 300-month sentence. I'm saying in open court, the prosecution basically asked... I guess we could say asked when they said, hey, she's lucky she can only get 10 years. So, and in my... Well, that could have per count. I don't think so, Your Honor, because then she'd be facing 40 years. But the PSR had been out there for at least 30 days, right? I believe so, Your Honor. And it recommended... It said the guidelines range began at 300 plus, right? Right. I guess, Your Honor, the way I'll address this question is the guidelines are just the starting point. You don't think... And the judge departed downward here. And the judge departed downward, but it's still such a severe sentence that one would expect that he would be expected to give reasons. You talk about the other defendants. What were their guidelines ranges? I do not know that, Your Honor. That's actually not listed in the probation report, given that they were all part of this $11 million conspiracy and loss amount factors so prominently without knowing the exact guideline ranges. I can't imagine they would have been very different, though they would have got the three levels downward in terms of acceptance of responsibility and they took pleas. But Ms. Rodriguez, and as I point out in her opening brief, she got a sentence way higher than Jeffrey Skilling from Enron, the WorldCom defendants, all of these big fraudsters. So it's... That's a pretty tall order for a district court to consider every sentence that's been given to defendants over the last 15 years. So, Your Honor, I guess my whole point here is to argue that the judge should have given reasons. They didn't need to be lengthy reasons, but he should have given some sort of reasons to explain the sentence. He could have said, hey, Medicare fraud is incredibly serious. It's really wrecking havoc on the country, taxpayers. I'm giving you this sentence. He did absolutely none of that. And that's why these little issues I point out where the judge seemed unfamiliar with basic information from probation report, I find very concerning. And I think that this court, and I guess the court jumped ahead. So my first point would have been that we need to have enough information for meaningful appellate review. My view is we don't have that here. And it sounds as though this court is now saying, well, if we look at the entire sentencing record, then there is that support. And I would respectfully disagree based on the facts of the case. And I would say that remand is required. But I would even say, Your Honors, that all of this, in my mind, should be irrelevant because the district court judge never properly pronounced the sentence. He simply let probation give the breakdown. And I know that- Just to be clear, your client did not object to the consecutive sentencing? Or did she? She argued for a way below guideline sentence, which inherently would have objected at least indirectly to it, Your Honor. But my point is, and the government's going to get up and say that sentencing guideline 5G1.2D kind of lets us do this backward arithmetic to break down the 300 months. And I really, really think we'll be going down a very perilous path if this court just lets a judge pronounce just one global sentence and then probation decides how to break it down. Well, part of it is a judicial efficiency issue, right? I mean, let's say we do what you say and send it back for a redo. Do you have any impression that this judge would come to a different conclusion on remand? Is there any indication on the record that he would regret his error? Again, I'm so concerned about the probation report having, you know, the judge being unfamiliar with basic facts from it. The recent conception of the United States. And that was more so along the lines of the First Step Act. But if you're resentencing, you take the defendant the way he or she is at the time of remand, not just the way she was back in 2010. What's changed that would change the sentencing guidelines? Nothing in the record, Your Honor, but I'm assuming disciplinary history in prison, rehabilitation programs, educational programs. So I do think a lot would have changed in the past three years. I wish this was in the record. It's not. But I do think that especially with such a harsh sentence that remand is required and that she deserves to be sentenced. You've saved some time for rebuttal. Yes, Your Honor. Thank you. Good morning. May it please the Court. Jason Smith for the United States. I'd like to start by answering a question that Judge Ho asked, or I guess maybe confirming the record. The defendant did not object to the consecutive sentences and did not object to the explanation of the reason, either for the total sentence or the explanation of the decision to impose them consecutively. So on those issues, we're here on plain error review. Although I think counsel's arguing that it's obvious that that objection was implicit since they were opposing any sentence over the 10-year, over the statutory maximum on one count. So by definition, they were obviously opposing consecutive. I'm not aware of any decision from this Court adopting that sort of view of a general request for a below-guideline sentence to constitute an objection to a consecutive sentence that hasn't been imposed yet. It seems like you have to wait for something to happen to object to it, and they didn't do that here. And so there wasn't the opportunity for the district court to correct what they're now saying is an error. I suppose the PSR presumably would have put her on notice that that was on the table. Absolutely. As did the government's comments at sentencing, as Judge Inglehart asked, at sentencing, notwithstanding the sort of one slip of the tongue where the prosecutor referred to a 10-year statutory maximum, it was clear that the government was seeking a guideline sentence, and it was clear that a guideline sentence in this case exceeded 300 months. I'd like to deal with the record just a little bit on the question of the Court actually imposing the sentence. Before you do that, the only way you can get to a guideline sentence under the way it is set forth is to have consecutive sentences, right? I mean, there's no other way to put all of the offenses together for which she was found guilty and come up with a guideline sentence. That's correct, Judge, and we lay that out in our brief with respect to the guidelines, the way that the sentence was imposed and structured here is a legal sentence. Professor, I don't completely understand what the argument is that this was somehow an illegal sentence. It was within the statutory maximum for every count. It was structured precisely as 5G calls for. It's a legal sentence, and what happens at sentencing, which is at pages, the key parts are at pages 993 to 995 of the record, the District Court announces that it is imposing an aggregate sentence of 300 months. The probation officer steps in and says, for clarification, Your Honor stated a sentence of 300 months as to counts 1 through 4. I believe, Your Honor, we need to break it down a little bit further, and then the probation officer offers the structure that's ultimately adopted here of 120 months consecutive on counts 1 and 2, 60 months consecutive on count 3, and then 120 months concurrent on count 4, and the district judge's response is, That isn't what I said. Obviously, the district judge didn't say those words. He didn't lay out that structure, but that comment indicates, Well, yes, of course, that's what I intended. In the same way that 5G calls for the sentences to be imposed consecutively, but only to the extent necessary to reach that total aggregate sentence, the court is, I hesitate to say as clearly as possible, but quite clearly indicating that the structure that the probation officer has laid out there is the one that the court intended, and then they go through a little back and forth sort of a dialogue where the District Court starts repeating that structure, and the probation officer chimes in, and at the end of that, having again re-articulated this specific sentence, the court says, Okay. The idea that this is something that was imposed by the probation department and not intended by the District Court just isn't supported by the record. I'd like to just briefly address the substantive reasonableness arguments regarding sentences that were handed down in other folks participating in this scheme or similar schemes. As we discussed in our brief, the couple of sentences that the defense is referring to, number one, are not for defendants who are similarly situated to the defendant here. Magdalene R. Carman, in particular, was a cooperator. This court has repeatedly recognized that cooperators are not similarly situated to defendants who deny guilt and go to trial. The second defendant who the defense refers to, we have very little evidence about what that person's role was in the scheme. There's a single paragraph in the PSR that just refers to that 36-month sentence, which doesn't really give any basis to find that these folks were similarly situated. Ms. Rodriguez was quite similarly situated to Dr. Ramirez, who was responsible, who was her employee, who was signing these false certifications at her business as part of the that arguably she was above him in. He received a 300-month sentence. The other person who really does appear to be similarly situated is Ann Shepard Nwoko, who received a 360-month sentence, who also owned one of these companies that was selling these false certifications to allow home health companies to bill Medicare. So even if the sort of defendant-to-defendant comparison was a valid basis to challenge the defense, to challenge the sentence here, and as we argue in our brief, that's strongly frowned upon by this court, the proper people to measure Ms. Rodriguez's I'm happy to answer any other questions that the court has, but if there aren't any more questions, we'll rest on our brief and ask that this court affirm the sentence and the convictions below. Your Honors, I believe I'll be very brief. First of all, comparing Dr. Ramirez to Ms. Rodriguez in terms of sentencing isn't fair in my view. Dr. Ramirez was a medical doctor. He had a Medicare billing number, and all the billing was done under him. While, yes, Ms. Rodriguez did own the clinic, she really was a layperson when it came to Medicare billing. She did not receive any training, any pamphlets from Medicare. That's all in the record. So given her involvement vis-a-vis a medical doctor, I don't think it's an apt comparison. In terms of the court ultimately adopting, it seems as though the government takes a different view of the word okay and okay. It's more complicated than it has to be. I still don't think, it sounded to me like the district court was throwing his hands up rather than adopting or ratifying the sentence, and I will just conclude by saying again we have a 56-year-old defendant at sentencing, many health issues, first-time offender, no violent conduct at all. She'll quite possibly die in prison. She deserved a lot more thought and care in fashioning her sentence, and I absolutely believe there should be a remand. I don't think there's any question, at least in my mind, that a district judge could have absent extreme situations. We generally defer to district courts. This is a district court that the government didn't want to be in, but you all seemed okay with it. And Your Honor, what I'd say to that is again the fact that the judge let probation pronounce the sentence, the fact that, I believe my colleague referred to it as a slip of the tongue in terms of the prosecutor saying 10 years at sentencing, all these things build up to give, combined with the fact that the judge made no reference to 3553A other than simply saying I'm considering 3553A and I'm the very downward. Do you acknowledge he ultimately adopts the PSR and agrees with the framework and is in fact more lenient than the PSR? More or less yes, Your Honor, but it's just so bizarre because his comments really make it seem that he did not think the abuse of trust enhancement was warranted. The government even concedes that in their brief. So he did adopt it, but he also kept really having an issue with the abuse of trust. So I really think that this court... So that just means he didn't adopt it in full, which you already know since he downward departed from the PSR. He downward departed, but it sounded like he adopted the calculations. I really think that he didn't give us enough for review and we need a remand so that she can be sentenced anew. What's your best indication in the record that on remand we would have a different result? And let's stipulate it would go back to the same judge. Those are the three comments I was telling the court about where the judge, at this point it's been so long I don't remember that with respect to Ackerman's sentence of 36 months. It shows the he wasn't. Then when he says in terms of how many defendants, I just don't remember, I didn't think of looking it up. That's on one of the first page of the probation report. He's unfamiliar that Ms. Rodriguez moved to vacated even though it went to him saying nobody has moved to vacated or adjusted or anything referring to the verdict. That's page 988. The judge just really seemed unfamiliar about the case and about the probation report. We're talking about simple facts, first three to five pages, and so I do think that especially in light of Concepcion, if we send it back down, if the court sends it back down, that it's quite possible that there will be a different result. Your best argument seems to me is that the district court rejected the abuse of power or abuse of trust enhancement and therefore he applied the wrong guidelines to her. Isn't that your best argument? I still think the failure to pronounce sentence is my best argument, but I would agree that the judge abused his discretion in adopting those two points for abuse of trust and that would give us a reason to send it back down. I really do believe the result would be different. And your honor, subject to further questions, that concludes my submissions. Thank you. Mr. Smith, we will hear your argument regarding your cross appeal. Your honor, the district court abused its discretion in barring the designated AUSA from appearing in his courtroom, issued that bar without stating any legal basis, refused to provide any reasons for the bar, didn't consider the strong separation of powers prohibiting this designated prosecutor from appearing implicated, both the constitutional and the practical separation of powers implications of that. Can I ask some questions about what's currently happening, because this was a while back. Absolutely, Judge. Is it Ansari? Has she appeared in Judge Heath's court since the day that she was excluded in this case? It's not in the record and I don't frankly know, but I do not believe that she has, Judge. Okay. Hammond, go ahead. And just to follow up, is that because the government has understandably not sent her back to this court or because she has been barred since, I guess, what, 2019? Well, I think those two things are linked. The government certainly understands that she's barred from appearing there. It's just a question. Understood, Judge. And certainly, we understand her to be barred from appearing there. And again, I don't know the specifics, but I think we would be reluctant to create some issue by sending her in when we understand that, Judge. How many Assistant U.S. Attorneys are there in the Houston Division of the Southern District of Texas? I do not know the answer to that, Your Honor. I apologize. I think we are of 100, I would say 100 to 150, but I don't know for sure. And how are the Assistant U.S. Attorneys assigned? Do they know before the case is assigned to a specific judge? I mean, how does that work? Absolutely. AUSAs are assigned to a case very early on, generally at the investigative phase, particularly with a fraud investigation like this type of case. But she wouldn't know who the judge would be until it was actually, the indictment was submitted. That's correct, Your Honor. As we laid out in our brief, district judge isn't assigned until an indictment is returned. Right. Okay. So, and under the current Division of Work order in the Southern District of Texas, about 11% of the new cases go to Judge Hughes. So, there is a probability that any case to which Ms. Ansari is assigned could wind up in front of Judge Hughes. About how many cases, percentage-wise, in your office would she be assigned to? I'm just trying to get order of magnitude here. I understand, Judge. I don't know the breakdown, but I know Ms. Ansari primarily works these kinds of healthcare fraud cases. I don't know what percentage of the office's workload that is. But it's a, it is a significant probability that she will wind up having some case assigned to Judge Hughes here. And I think some of that's reflected in the record here that shortly after the Swenson decision came down from this court, she found herself for trial before Judge Hughes. I think you're saying one chance in ten that she's going to be, that the indictment will land in his court, and therefore, you have to make a switch, essentially. Roughly, Judge. That's correct. Assuming that we were to set aside the disqualification, if you will, in this case, and she were assigned to Judge Hughes in a future case, would you, the government move to recuse Judge Hughes? I wouldn't expect to judge. That's frankly, the decision to move for recusal is one that has to go quite high up in the department to be approved. I have not discussed that possibility with the office, but I wouldn't expect to. The office hadn't initially taken that step when Ms. Ansari arrived for trial in this case, notwithstanding the conduct in Swenson that this court found to be so demeaning and inappropriate, and the fact that it sent that case back to be assigned to a different judge. So I would not expect that we would. Although didn't, do I, maybe I misrecalled, at the Ben Davis phase, didn't you all ask for a reassignment, or was it just to let her in? We did in this case, Judge, but that is. You're saying that's a, it's a case-by-case analysis. Correct, and that was after, in this case, the judge had taken the actions we did, where he euphemistically excused her, refused to allow her to participate, and wouldn't explain why. You're saying you wouldn't automatically recuse, but you would see how it goes, I guess. Sure, recusal is obviously a very weighty decision made on the facts as they present themselves, not knowing how things would play out. I think your characterization that we would not seek recusal just based on who the prosecutor is and who the judge is, is absolutely correct. So what is the proper procedural remedy? Let's say that you're right on the merits. I mean, is this, isn't it sort of too late to do it at this stage, and the case is over? You're obviously not appealing the judgment, so I mean, what's, as far as you're concerned, the case is over. Should this have been handled in a mandamus posture or collateral order type appeal posture, or do you think final judgment actually is correct and we can't do this at mandamus or on a collateral appeal? Well, this Court has found that it wouldn't do it on a mandamus posture. But to be clear, I appreciate what you're saying. A panel of this Court did deny the is mandamus the proper procedure in this? Or are you saying that it's not proper, and the only way to do this is on final judgment? Well, you know, I'm constrained by how the Court has handled this, how another panel of the Court has handled this before. It's not a precedential ruling. I mean, let's put aside the mandamus. I think either of those avenues could be pursued, and I think this Court would have authority under either of those avenues. We frankly thought that our mandamus arguments met the standard. This Court— Well, it just seems to me it's too late now. No matter what—I mean, unless you're going to have a retrial or resentencing, as opposed to counsel wants, there's no way to get Ms. Ansari back into this case. It's too late. There is no way to get Ms. Ansari back into this case, but that's not dispositive when the district court uses its inherent power to issue a sanction like this, and there are two things. Number one— But the sanction has no teeth in this case, or doesn't. I mean, it seems to me the sanction, the reason you're here is not for this case, it's for future cases. Yes. Or is it? That's what I'm— We're here because the order's improper and the judge abused his discretion. There is a prospective nature to this order that is, as we talked about— In this case? Not in this case, but as barring Ms. Ansari from appearing in this judge's courtroom. But the fact that the case is done and that the sanction appears to have run its course does not—has not previously affected this court's decision to review a sanction order and to vacate the order when it was improper. And the case I'd point the court to is Kipps v. Callier, 197 F. 3rd, 765. The underlying case there was a wrongful termination action. The district court used its inherent power to sanction plaintiff's counsel based on a letter that plaintiff's counsel had sent out. And the sanction was to require plaintiff's counsel to send an amendatory letter. The district court then goes on to grant defendants summary judgment or to dismiss all of the underlying claims. So the case is dead. The plaintiff's appeal, both the summary judgment and dismissal, and also the sanctions order, which was at that time also completely completed because plaintiff's counsel had sent the amendatory letter that the court required. So notwithstanding the fact that the case was dead and that the sanctions had arguably been completed, this court went ahead and reviewed the sanctions order, found that the district court had abused its discretion in entering that sanctions order because it hadn't made the requisite finding that counsel acted in bad faith. And indeed, it couldn't make that finding on the record there, which is very analogous to our situation here. And this court found that the district court abused its discretion and it vacated that sanctions order. And that is the same result that we're looking for. Okay, let's say we do that. That's all you're asking for. Is that we vacate this sanction? Is that it? Yes, this court find that the district court abused its discretion and vacate the sanctions order. So you're not asking us to affirmatively say that she's not barred going forward? I mean, is there, I mean, is there, did he order you, you could never set foot in my court again? Because of his refusal to explain the order or his reasoning, it is a, there is not that clear of a statement, but what he said was Ms. Ansari is not welcome here. Okay, let's, you're saying there were no findings of bad faith as to Ms. Ansari. So let's say we agree with you, we vacate the sanction. She shows up in his court next week, he says, okay, we're going to have a hearing on whether you were in bad faith in the underlying original case. What do you, what would happen? What do you say should happen? I hesitate to predict too much, Your Honor. I think the district court couldn't find bad faith in the prior litigation in Swenson because that is largely foreclosed by this court's opinion in Swenson where it found there was nothing to support a finding of bad faith. It's a little hard to know what the district court might seek to use as a basis, but to the extent that there is any valid concern about an AUSA or anyone else's qualifications or prior conduct, there are mechanisms for the court to take that up and we lay some of that out. There are disciplinary rules in the Southern District of Texas which allow a referral for a proper hearing on those kinds of things. And we certainly don't think that's warranted here given the full way that Swenson was litigated and the information that was before this court when it found there was no opportunity for bad faith, but there is a possibility and a mechanism for reviewing an attorney's conduct and seeing whether it is subject to any kind of sanction. And I think the 28J case that we submitted recently, Vickas involving this same judge using his inherent authority, gives a good framework for the kind of review that this court does when a district court relies on its inherent authority to issue a sanction. And much like Vickas here, the district court's decision just cannot withstand that kind of scrutiny given the lack of explanation that he gave, the lack of a legal basis that he gave, and the fact that to the extent he ultimately did articulate any reasons for this order, they conflict with what this court already found in Swenson. So we ask that this court find that the district judge abused his authority. If the court doesn't have any further questions, we'll rest on our brief.